THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDDIE J. BARTEE, JR., Defendant-Appellant.

Second District   No. 2—89—0256

Opinion filed January 30, 1991.

G. Joseph Weller, Francine Harrison, and Kathleen J. Hamill, all of State Appellate Defender's Office, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant Eddie J. Bartee, Jr., was charged by indictment with one count of attempted armed robbery (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 18—1(a)). Following trial by jury, defendant was found guilty as charged and sentenced to a 12-year term of imprisonment. Defendant now appeals his conviction. We affirm.

Midway through the trial, defendant's counsel advised the court "that during the course of the trial something happened" between defendant and him which required counsel to withdraw from the case and forbade his placing defendant on the stand to testify. Counsel stated that he was precluded from telling the court the exact nature of the problem that had arisen but did cite to the court the case of *Nix v. Whiteside* (1986), 475 U.S. 157, 89 L. Ed. 2d 123, 106 S. Ct. 988, which dealt with an attorney's obligations when he knows his client intends to commit perjury, and Supreme Court Rules 4—101, 2—110(b)) and 7—102 (107 Ill. 2d Rules 4—101, 2—110(b), 7—102). The court denied counsel's motion to withdraw, but ruled that defendant would testify in a narrative form without questioning from his counsel. The court also ordered defense counsel not to comment on defendant's testimony in his closing argument. Defendant did testify in a narrative form.

Defendant now contends that he was denied the right to effective assistance of counsel and a fair trial by the court's order requiring him to testify in a narrative form. Defendant argues that the court should not have accepted counsel's opinion that defendant was going to commit perjury without first determining that counsel had a firm factual basis for his belief. He, therefore, prays this court to remand the cause for an evidentiary hearing. To support this theory, defendant cites *United States v. Long* (8th Cir. 1988), 857 F.2d 436. The

court there held that defense counsel was "required to take such measures as would give him 'a firm factual basis' for believing [defendant] would testify falsely." (*Long*, 857 F.2d at 444.) The court further held that "a clear expression of intent to commit perjury is required before an attorney can reveal client confidences." (*Long*, 857 F.2d at 445.) While attempting to factually distinguish the case of *Nix v. Whiteside* (1986), 475 U.S. 157, 89 L. Ed. 2d 123, 106 S. Ct. 988, the *Long* court often relied on the rationale of certain concurring opinions from *Nix*. The court reasoned, as did Justice Blackmun in *Nix*, that an attorney that informs the court of his belief of possible perjury by his client "takes on the role of the fact finder, a role which perverts the structure of [an] adversary system." (*Long*, 857 F.2d at 445.) The court also focused on the reasons given by Justices Blackmun and Stevens for limiting court notification of possible perjury to "announced plans" to commit perjury: counsel's perceptions may be incorrect, the client may more clearly recollect certain details that contradict prior recollections, and that even a stated intent to perjure one's self does not necessarily mean that the client *will* lie once sworn in on the stand. (*Long*, 857 F.2d at 445.) These reasons, and others, compelled the *Long* court to hold that "it is absolutely essential that a lawyer have a firm factual basis before adopting a belief of impending perjury." (*Long*, 857 F.2d at 445-46.) Because the record did not disclose whether defense counsel had such a basis for believing his client would testify falsely, such a finding could only be adequately determined after an evidentiary hearing. *Long*, 857 F.2d at 446.

■ We note that this State has never adopted the "firm factual basis" test proposed in *Long*. While not dealing with the exact issue present in the case before us, *People v. Flores* (1989), 128 Ill. 2d 66, provides guidance and implicitly rejects the *Long* standard. In *Flores*, defendant contended in a petition for post-conviction relief that his attorney had been ineffective because, among other things, he had not called several of defendant's family members to testify in support of defendant's alibi. Defense counsel testified at the post-conviction hearing that he did not call the family members to testify because he found the alibi to be unreliable; defendant's various statements were contradictory, as were those of members of defendant's family. (*Flores*, 128 Ill. 2d at 105-07.) On appeal to the supreme court, defendant argued that mere suspicion by defense counsel that testimony is perjurious is insufficient; actual knowledge of the perjury is required before counsel can refuse to call an alibi witness. The supreme court disagreed, holding:

"[D]efense counsel should have discretion to make a *good-faith*

*determination* whether particular proposed witnesses for the defendant would testify untruthfully. *Absent some showing that counsel's decision was unreasonable* under the circumstances, we cannot say that the defendant was denied a fair trial as a consequence of counsel's election not to call the members of his family to present an alibi. *For the same reason, defense counsel was not incompetent in refusing to permit the defendant to testify to the purported alibi.*" (Emphasis added.) (*Flores*, 128 Ill. 2d at 107.)

The court clearly adopted a less stringent test of a "good-faith determination" by defense counsel that witnesses will perjure themselves. Defendant here argues that the *Flores* approach does not apply to this case because the defendant's right to testify was not involved in *Flores*. Defendant's reading of *Flores* is incomplete. The court applied the same reasoning to counsel's refusal to permit defendant to testify to the alibi. (See *Flores*, 128 Ill. 2d at 107.) We are not told how counsel was able to refuse to permit defendant to testify to the alibi. However, the court granted great discretion to defense counsel in determining whether the testimony would be truthful. There is no indication that our supreme court requires a demonstrable "firm factual basis" for counsel's belief. Additionally, the court's holding in no way refers to defendant's choice of remedy, a hearing to determine the basis for counsel's belief. Defendant would require an evidentiary hearing before counsel could move to withdraw or have a defendant testify in narrative form. Defendant cites no case, other than *Long*, that would require such action. We decline to adopt the holding in *Long* and conclude that defendant was not denied a fair trial or effective assistance of counsel by having to testify in the narrative.

■ Defendant next contends that the court erred in not giving him an opportunity to present redirect testimony after he was cross-examined by the State. Neither defendant nor his attorney requested such an opportunity. The scope of redirect examination is within the discretion of the trial court. (*People v. Washington* (1984), 127 Ill. App. 3d 365, 382.) The court can hardly be accused of abusing its discretion when it was not asked to exercise and did not exercise its discretion. Defendant has failed to show an abuse of discretion; no new trial is required on this basis.

Defendant next contends that he was improperly denied the opportunity to impeach the complaining witness Antonio Delgado with proof that Delgado's trial testimony differed from the statement Delgado gave to the police the day after the offense occurred. On cross-examination, Delgado denied giving to police officer Brictson a

statement of the events of the night in question which differed in many material respects with the testimony he had just given on direct examination. Defendant later called Officer Brictson to testify as to what Delgado told him on the day after the alleged incident. The State objected, arguing that the proper foundation had not been laid to impeach Delgado. Delgado had given his statement to Brictson through Delgado's wife, who acted as interpreter; Delgado spoke little English while Brictson spoke no Spanish. The State successfully contended that the proper party to impeach Delgado was Delgado's wife; defense counsel never called her to testify.

■ Officer Brictson was the proper party to impeach Delgado. However, Delgado's wife was necessary to the foundation needed for Brictson's testimony. Only Delgado's wife could testify as to the accuracy of the statement given to Brictson. Without testimony from Delgado's wife that she accurately interpreted her husband's statements and accurately related them to Brictson, Brictson's testimony was inadmissible. The court, therefore, properly excluded Officer Brictson's testimony.

■ Defendant next argues that he was denied a fair trial by the complaining witness' testimony on redirect examination. We note that defendant failed to object at trial on the grounds raised here and to include the issue in his post-trial motion. Such failures waive the issue. See *People v. Enoch* (1988), 122 Ill. 2d 176, 186.

Even if we were to consider this issue, defendant's argument would fail. During cross-examination, defendant questioned Delgado about Delgado's refusal to cooperate with defense counsel prior to trial. On redirect, the prosecutor asked:

> "Mr. Delgado, is it correct that you and your family have been threatened not to come to testify in court?"

A defense objection to the question was sustained, and the jury was instructed to disregard Delgado's affirmative response. The court, however, allowed the State to go into the issue to show why Delgado refused to talk to defense counsel. When asked about a particular telephone call received prior to a hearing date, Delgado responded:

> "I was called on that very day and told that if I showed up in court—."

The court did not allow Delgado to get into the substance of the telephone call. However, Delgado later asserted that he recognized the voice from the phone call "as the voice of a black person." Defendant here is black. No objection was made to this answer.

Defendant now argues that the redirect examination was not designed to show why Delgado refused to speak to defense counsel be-

fore trial, but to insinuate that defendant, or someone on his behalf, was attempting to intimidate Delgado. Furthermore, defendant argues, no evidence was ever presented to tie defendant to the alleged intimidating call.

● ■ ■ Where the door to a subject is opened by the defense on cross-examination, the State may, on redirect, question the witness to explain or clarify matters brought out during cross-examination. (*People v. Thompkins* (1988), 121 Ill. 2d 401, 444.) A witness may be questioned in such a way as to remove unfavorable inferences or impressions raised during cross-examination. (*People v. Sanchez* (1979), 73 Ill. App. 3d 607, 610.) The decision to admit or exclude such evidence is within the discretion of the trial court. (*People v. Chambers* (1989), 179 Ill. App. 3d 565, 577.) Here, defendant attempted to show that Delgado was not cooperative with defense counsel's preparation of a defense. We conclude that it was not erroneous to allow the State to rehabilitate its witness by allowing him to testify as to why he was uncooperative.

For these reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

REINHARD, P.J., and GEIGER J., concur.